Bruce GELMAN, Esquire, On Behalf of Himself and All others similarly situated

v.

STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY, Bruce Gelman, Appellant.

No. 07–3665.

United States Court of Appeals, Third Circuit.

Argued: Sept. 9, 2008.

Opinion filed: Oct. 5, 2009.

Patrick J. Loughren, Esq. (Argued), Loughren, Loughren & Loughren, P.C., Pittsburgh, PA, Daniel C. Levin, Esq. Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Christopher G. Hayes, Esq., The Law Office of Christopher G. Hayes, West Chester, PA, for Appellant.

James T. Moughan, Esq., Britt, Hankins & Moughan, Philadelphia, PA, Michael P. Kenny, Esq., Cari K. Dawson, Esq. (Argued), Derin B. Dickerson, Esq., Alston & Bird LLP, Atlanta, GA, for Appellee.

Thomas W. Curvin, Esq., Valerie S. Sanders, Esq., Drew D. Dropkin, Esq., Sutherland Asbill & Brennan LLP, N.E. Atlanta, GA, for Amicus Curiae, Property Casualty Insurers Association of America, in support of Appellees.

Before: SCIRICA, Chief Circuit Judge, McKEE and SMITH, Circuit Judges.

## OPINION

McKEE, Circuit Judge.

Bruce Gelman appeals the district court's Rule 12(b)(6) dismissal of the claims he filed under the Fair Credit Reporting Act that arose from an allegedly improper disclosure of his credit report and a subsequent mailer from an insurance company that arose from that disclosure. For the reasons that follow, we will affirm the district court.

## I. FACTUAL BACKGROUND[1]

On or about November 18, 2004, State Farm Mutual Automobile Insurance Company requested and obtained Gelman's consumer credit report from Experian, a consumer reporting agency, without Gelman's consent or authorization. Gelman alleges that he did not discover that State Farm had obtained his consumer credit report until April 5, 2006, when he received a copy of his consumer credit report from Experian. His consumer credit report noted that State Farm had obtained his credit report for a "permissible purpose." Gelman sued State Farm after the latter obtained a copy of his credit report from a credit reporting agency and used it to select Gelman to receive materials pertaining to insurance products that he might qualify for and/or be interested in.

The mailer that was sent claims that State Farm has been the "No. 1 auto insurer since 1942."[2] In a paragraph set

---

1. The facts are as alleged in Gelman's complaint. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.2005). (When reviewing a dismissal for failure to state a claim under Fed. R.Civ.P. 12(b)(6), we assume the truth of the plaintiff's allegations.)

2. A copy of the mailer he received from State Farm was attached to his complaint as an

off by a border, the mailer says it is a "prescreened offer." It also states in bold, enlarged font: "Call ... for a quote or return the attached card today. I could save you up to $356!*." The mailer also claims: "[a]s your agent, I'll help you find the right level of coverage at the right price for your needs. By getting to know you personally, I can offer: Competitive rates that can save you up to $356 or more.* " A footnote to the asterisk states: "Actual average annual savings were $356.58 per household. This amount is based on a January 2005 survey of new policyholders who reported savings through State Farm as compared to their previous carriers' rates."

An attached card further describes the auto insurance "offering." Its caption reads: "Learn more about auto insurance at statefarm.com." The line underneath the caption and next to a checkmarked box reads: "Yes! I'd like more insurance information on State Farm auto insurance." The attached card asks for the recipient's phone number, best time to call, name of current car insurance carrier and renewal date of car insurance. That card also gives the recipient the opportunity to request more information regarding homeowners insurance, flexible payment options, life insurance or "other."

In addition, the mailer contains the following opt-out notice in a paragraph set off by a border: "You can choose to stop receiving 'prescreened' offers of insurance from this and other companies by calling toll-free.... See 'PRESCREEN & OPT-OUT NOTICE' on the other side for more information about prescreened offers." The other side of the mailer that is referenced contains the following information:

exhibit. The exhibit is an undated sample mailer, and Gelman does not allege when he

PRESCREEN & OPT-OUT NOTICE: This "prescreened" offer of insurance is based on the information in your consumer reports, including your credit report, indicating that you meet certain eligibility criteria. This offer is not guaranteed if you do not meet our criteria at the time of application and expires 60 days after you receive it. If you wish to omit your name from future State Farm mailings, please contact me at: State Farm Customer Mail Response Center at: State Farm Insurance Company–Customer Mail Response Center—P.O. Box 1800—Aurora, ILL 60507–9863. If you do not want to receive prescreened offers of insurance from this and other companies, contact the consumer reporting agencies listed below or call toll-free....

Gelman contends that State Farm's mailer is an invitation to call State Farm to find out about the various insurance products that State Farm might attempt to sell. Put another way, Gelman contends that the State Farm mailing is nothing more than promotional material soliciting him to contact State Farm regarding its various insurance products and that it is therefore not the kind of firm offer of insurance that would legitimize State Farm's access to his credit report under federal law.

## II. DISTRICT COURT PROCEEDINGS

On November 22, 2006, Gelman filed a putative class action complaint against State Farm asserting four substantive and two procedural claims arising under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Specifically, Gelman asserted that: (1) State Farm ob-

received it.

tained his credit report from a credit reporting agency under false pretenses in knowing and willful violation of § 1681 q ("false pretenses claim"); (2) State Farm willfully violated § 1681b(f) without a permissible purpose ("permissible purpose claim"); (3) State Farm's offer of insurance did not contain the "clear and conspicuous" disclosures required by § 1681m ("the disclosure claim"); and (4) State Farm negligently violated each of the foregoing statutory provisions in violation of § 1681o. Gelman also sought declaratory and injunctive relief.

State Farm responded by filing a motion to dismiss for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6), and the district court granted that motion as to all of Gelman's claims. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2306578 (E.D.Pa. Aug.9, 2007). The district court held that Gelman failed to state a claim for his false pretenses and permissible purpose claims because State Farm's mailer constituted an offer of insurance under the FCRA, and that was a "permissible purpose" for disclosing Gelman's credit report. *Id.* at *4–8. It further held that the FCRA does not provide for a private right of action to recover for disclosures that are contrary to provisions of the FCRA. *Id.* at *8. The district court also held that the FCRA does not provide private litigants declaratory and injunctive relief. *Id.* at *9. This appeal followed.[3]

## III. STANDARD OF REVIEW

We exercise plenary review of the district court's order granting a motion to dismiss for failure to state a claim. *Santiago v. GMAC Mortgage Corp.*, 417 F.3d 384, 386 (3d Cir.2005). In determining whether a district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) was proper, we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)[4] (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

▇ In addition, because Gelman attached a copy of State Farm's mailer to his complaint, the mailer may be considered for purposes of ruling upon the Rule 12(b)(6) motion. *See Pension Benefit Guar. Corp. v. White Consl. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

---

**3.** Gelman is only challenging the district court's holding that State Farm's mailer was an offer of insurance and that the disclosure of his credit report was therefore permissible under the FCRA. That holding resulted in the dismissal of each of Gelman's claims under the FCRA.

**4.** *Iqbal* was decided by the Supreme Court after this case was argued. However, "appellate courts are obliged to apply the law as they find it at the time of their judgment." *C & K Coal Co. v. United Mine Workers of America*, 704 F.2d 690, 698 (3d Cir.1983).

## IV. LEGAL BACKGROUND

 "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2205, 167 L.Ed.2d 1045 (2007). In doing so, Congress sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).[5] A "consumer reporting agency" is defined as: "any person which, for monetary fees, dues, or a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

The Act explains: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer." 15 U.S.C. § 1681(a)(4). Accordingly, Congress prohibited credit agencies from releasing consumer credit reports [6] "unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a)." *Cole*, 389 F.3d at 725.

Section 1681 provides for release of consumer credit reports " '[s]ubject to subsection (c) of [that] section,' " under certain narrowly defined circumstances "and no other . . .' " *Cole*, 389 F.3d at 725.

However, in enacting § 1681, Congress realized that disclosures of consumer credit reports are often the direct result of inquiries initiated by consumers themselves. Congress allowed for disclosure in many such situations because they "do not create significant privacy concerns." *Cole*, 389 F.3d at 725. "For example, when the consumer applies for credit, employment, insurance or a license, the consumer reporting agency may release the consumer's report." *Id.* at 726, n. 5 (citing 15 U.S.C. § 1681b(a)(3)(A)-(F)). That section also provides for: "limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized the release." *Id.* at 725. One such situation occurs when a credit or insurance provider is extending the consumer a "firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(i). As we stated earlier, Gelman is alleging that State Farm failed to make a firm offer of "insurance," and the disclosure was therefore not within the narrow exemption in the FCRA allowing disclosure of consumer credit reports for firm offers of insurance.[7]

---

5. For reasons that will become apparent in our discussion of *Cole*, that case is readily distinguishable from the situation here, and it has since been limited to circumstances not before us. Nevertheless, that decision remains one of the few appellate decisions interpreting provisions of the FCRA applicable here, and its interpretation of terms used in the FCRA remains helpful.

6. A "consumer credit report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).

7. Inasmuch as State Farm's mailing did not involve an offer of credit, or a solicitation for a loan, we limit our discussion to the exemp-

The FCRA defines a "firm offer of ... insurance" as: any offer of ... insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report, to meet the specific criteria used to select the consumer for the offer. . . .

15 U.S.C. § 1681a(*l*). However, Congress allowed a "firm offer" to be conditioned on three specific requirements, the existence of which do not preclude an offer of insurance from being "firm." First, the consumer may need to satisfy additional preselected criteria bearing on the consumer's creditworthiness. 15 U.S.C. § 1681a(*l*)(1). Second, the offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(*l*)(2). Third, the offer may be conditioned on the consumer's furnishing any collateral that was both established before the selection of the consumer for the offer and disclosed to the consumer in the offer. 15 U.S.C. § 1681a(*l*)(3).

■ Congress gave the Federal Trade Commission ("FTC") primary responsibility for governmental enforcement of the FCRA. 15 U.S.C. § 1681s. However, the FCRA also creates a private cause of action. *See* 15 U.S.C. §§ 1681n-o. Sections 1681n and 1681o establish civil liability for willful and negligent noncompliance with § 1681. It allows recovery of actual damages, 15 U.S.C. § 1618o, as well as statutory and punitive damages if a violation is "willful." 15 U.S.C. § 1681n.[8]

## V. DISCUSSION

As noted, the district court held, *inter alia,* that Gelman failed to state a claim for his false pretenses claim, 15 U.S.C. § 1681q,[9] and his permissible purpose claim, 15 U.S.C. § 1681b(f),[10] because State Farm did send him a firm offer of insurance as defined by the FCRA. In so holding, the district court rejected Gelman's contention that a firm offer of insurance must have "value" to the consumer. In Gelman's view, an offer of insurance without value is nothing more than an advertisement or a solicitation of business, which is not a permissible purpose for seeking a consumer's credit report under the FCRA.

Gelman rests his argument that a firm offer of insurance must have value exclusively on the decision of the Court of Appeals for the Seventh Circuit in *Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004). He argues: "The statutory scheme of the FCRA makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the ... protection of his privacy.'" Appellant's Br. at 7 (quoting *Cole,* 389 F.3d at 726). Gelman's claim on appeal can be reduced to his contention that: "the District Court found that when determining a firm offer,

---

tion for firm offers of insurance contained in § 1681b.

**8.** "Willful" violations include reckless disregard of any requirement of the FCRA. *See Safeco Ins. Co. of America v. Burr, supra.*

**9.** 15 U.S.C. § 1681q, provides: "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both."

**10.** 15 U.S.C. § 1681b(f) provides: "A person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681 e of this title by a prospective user of the report through a general or specific certification."

you are not required to evaluate whether the offer has any value and thereby rejects the Seventh Circuit approach in Cole," Appellant's Br. at 10.

In *Cole,* an unsolicited mailing to Cole from U.S. Capital and Gleason Chevrolet offered a $300 credit that could only be used to purchase a car at Gleason Chevrolet. The mailing said approval was neither expressed nor implied and that interest rates might vary from 3% to 24.9%, with no indication of how interest would be compounded and with no indication of a repayment schedule. Cole sued U.S. Capital alleging, *inter alia,* an improper use of her credit report because the mailing was not a firm offer of credit. Rather, she claimed it was "merely a sham to justify obtaining her credit report." *Id.* at 726. She contended "that, given the insignificant amount of credit, the offer was not made with the expectation that a significant number of consumers would accept the offer, and, therefore, it cannot constitute a 'firm offer of credit' for purposes" of FCRA. *Id.*

U.S. Capital responded by arguing that the "lynchpin of 'firm offer of credit' is that some amount of credit—however small—is guaranteed." *Id.* In U.S. Capital's view, "the FCRA does not require a minimum amount of credit to be offered and therefore the preapproval could be for any amount, perhaps even as low as $1." *Id.* (citation omitted).

> In rejecting U.S. Capital's argument, the court wrote: We believe that the reading of "firm offer of credit" suggested by [U.S. Capital] . . . eviscerates the explicit statutory purpose of protecting consumer data and privacy. Indeed, such a definition would permit anyone to gain access to a sea of sensitive consumer information simply by offering some

nominal amount of guaranteed credit. The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information for catalogs and sales pitches. Such importuning simply—and understandably—is not among the permissible reasons for which a credit agency may disclose a consumer's credit information.

*Id.* at 726–27 (citations omitted). The court also believed that focusing on whether the offer would have been honored was "inappropriately narrow." *Id.* at 727. It wrote:

> To determine whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

*Id.* at 727–28 (emphasis in original).[11] Relying on Cole, Gelman submits that State Farm's mailer does not have any value to him and, therefore, is not a firm offer of

---

**11.** "The term 'firm offer of credit or insurance' means any offer of credit or insurance to a consumer that will be honored...." 15 U.S.C. § 1681a(*l*).

insurance. The argument lacks merit for a number of reasons.

First, Gelman never explains what "value" the mailer should have provided him. Second, irrespective of what Gelman means by "value," our inquiry must focus on the text of the statute itself. As the Supreme Court has commented:

We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."

*Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 461–62, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). As noted above, the FCRA provides that a "firm offer of ... insurance" means:

any offer of ... insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report, to meet the specific criteria used to select the consumer for the offer. . . .

15 U.S.C. § 1681a(*l* ). The text of § 1681a(*l* ) is unambiguous, and it does not mention "value," or anything akin to it. Moreover, in referring to "*any* offer of ... insurance," Congress clearly did not intend to limit the scope of § 1681a(*l* ), to only those having "value." We therefore can not accept Gelman's argument without effectuating a judicial amendment of the statute.

Third, even assuming *arguendo* that Congress intended to limit a firm offer to one that has value pursuant to the analysis in *Cole,* Gelman's argument would still be undermined by subsequent decisions limiting the reach of *Cole* to circumstances that do not exist here. In *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006), the court explained:

We held in *Cole* that a sham offer used to pitch a product rather than extend credit does not meet the statutory definition. A business that obtains consumer credit information and then offers a $1 loan (at 100% daily interest) toward the purchase of a car has not made a "firm offer *of credit* " but has instead used credit histories to identify potential auto buyers. That objective is not allowed under the [FCRA] we concluded in *Cole.*

*Id.* at 955 (emphasis in original). It further noted:

*Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from "all the material conditions that comprise the credit product in question ... [whether it] was a guise for solicitation rather than a legitimate credit product."

*Id.* at 955–56 (citing *Cole,* 389 F.3d at 728) (emphasis in Cole).

Thereafter, in *Murray v. New Cingular Wireless Services, Inc.,* 523 F.3d 719 (7th Cir.2008), the court limited *Cole's* "value" requirement even further. It wrote:

§ 1681b(c)(1)(B)(i) calls for a firm offer of credit but not a *valuable* firm offer of credit. A firm offer of credit suffices. *Cole* did not doubt this. The problem in *Cole* was how to disentangle an offer of *merchandise* from an offer *of credit* when they are made jointly (in *Cole,* the merchant was selling cars and offered to extend credit for a small fraction of the price). We asked whether the offer of credit would be valuable standing alone in order to see whether the non-consensual check of a person's credit history had been used to make an offer of merchandise, something the statute does not allow. . . . When credit histories are used to offer credit (or insurance) and nothing but, the right question is wheth-

er the offer is "firm" rather than whether it is "valuable."

*Id.* at 722 (emphasis in original).

Gelman's situation is completely unlike the car loan involved in *Cole.* Thus, *Cole* offers no support for his insistence on a value requirement, and his position is further undermined by the text of the FCRA.

■ In addition to advocating a value requirement, Gelman contends that because the term "firm offer" is not defined in the FCRA, the district court was required to determine the meaning of "firm offer." That argument ignores the very statute it purportedly rests upon because the FCRA specifically defines the term "firm offer." As noted earlier, the FCRA contains the following definition: a "firm offer of ... insurance" is "any offer of ... insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(*l*). Thus, as the court noted in *Murray v. New Cingular Wireless Services, Inc.,* 523 F.3d at 723 "'firm offer' is a defined phrase." A "firm offer" is one that will be *"honored"* (if the verification checks out).... *Id.; see also Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 841 (5th Cir.2004) (holding that a firm offer under the FCRA "really means a 'firm offer' if you meet certain criteria").

■ Although it contained substantial puffery and statements that could only have been intended as promotional, State Farm's letter to Gelman met the FCRA's statutory definition of a "firm offer." It stated: "[t]his 'presecreened' offer of insurance is based on information in your consumer report indicating that you meet certain eligibility criteria. This offer is not guaranteed if you do not meet our criteria at the time of application and expires 60

days after you receive it." The mailer also read: "[a]s your agent, I'll help you find the right level of coverage at the right price for your needs. By getting to know you personally, I can offer: Competitive rates that help you save up to $356 or more." The mailer thus stated that the offer of insurance contained therein would be honored if Gelman met certain criteria. Gelman did not allege that he responded to State Farm's mailing and was denied insurance even though he satisfied the pre-screening criteria. That would present a very different scenario that we need not now consider.

Finally, Gelman contends that the district court ignored the allegations in his complaint. Gelman submits that he alleged that the mailing was part of a marketing campaign. However, he contends that the district court mischaracterized his complaint and accepted State Farm's argument that its *intent* in sending the mailing was to extend a firm offer of insurance. He claims that the district court's acceptance of State Farm's argument is evident from its opinion. In buttressing that argument, he points to the following discussion in what he contends is footnote 3 of the district court's opinion:

> Even if the attachment does not satisfy the requirements for a firm offer of insurance, Plaintiff's claim still must fail. A party is not liable for obtaining consumer information pursuant to § 1681b as long as it **intends** to use the information for a permissible purpose. Plaintiff has not alleged that State Farm did not intend to use his credit report for a permissible purpose. In fact, Plaintiff implicitly concedes that his consumer report was obtained for a permissible purpose. (*See* Complaint at ¶ 12 ("the [consumer] report expressly stated that State Farm had reviewed [Plaintiff's] information for a 'permissible purpose by law")).

However, that quote is from a footnote in State Farm's motion to dismiss. It is not from the district court's opinion as Gelman mistakenly claims.

## VI. CONCLUSION

For all of the above reasons, we will affirm the district court's dismissal of Gelman's complaint pursuant to Fed.R.Civ.P. 12(b)(6).