**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3204
_____

MARJAC, LLC, a New Jersey Limited Liability
Company; DJF REALTY INC; MARIO LAVECCHIA;
JACK FIORENZA, JR.,

                         Appellants

v.

RICHARD TRENK, Esq., Township Attorney,
Booker, Rabinowitz, Trent, Lubetkin, Tully,
DiPasquale & Webster, P.C.; JOHN MCKEON,
Mayor and Council for the Township of West Orange;
SUSAN BORG, Planning Board Director,
West Orange Building Dept; RUSSELL DESANTIS,
Building Sub-Code Official, West Orange Health
Dept.; JAMES MONTGOMERY, Health Inspector

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-01440)
District Judge: Honorable Joseph A. Greenaway, Jr.

_____

Submitted under Third Circuit LAR 34.1 (a)
on March 25, 2010

Before: RENDELL, FUENTES, and CHAGARES, Circuit Judges.

(Filed: May 14, 2010)

## OPINION OF THE COURT

PER CURIAM

The plaintiff-appellant real estate developers appeal the District Court's order of dismissal and grant of summary judgment in favor of defendant-appellee township officials in this action for discriminatory enforcement of municipal zoning laws. For the reasons set forth below, we will vacate the judgment as to plaintiff-appellants' substantive due process claims regarding one defendant-appellee, but affirm in all other respects.

I.

MARJAC, LLC, DJF Realty, Inc., Mario Lavecchia, and Jack Fiorenza, Jr. (collectively, "the plaintiffs"), own real property and a liquor license in the Township of West Orange, New Jersey (the "Township"). In September 2002, the plaintiffs undertook development of Etcetera Restaurant and Flirt Nightclub "with the goal of establishing a landmark destination featuring Essex County's trendiest new restaurant, one of New Jersey's largest and most upscale nightclubs, and a first class catering business." A61-A62. The plaintiffs' investment in the project exceeded $4 million, including $2.5 million borrowed from local banks under financing through the Small Business Administration. In November 2002, the Township's Planning Board granted approval permits and zoning variances necessary to commence construction.

On June 16, 2004, by which time construction was 90% complete, the Township issued the first of numerous Stop Work Orders citing material variances from the approved plans. In particular, the Township claimed, inter alia, that: (1) as built, the structure exceeded the approved site footprint, A136-A137; (2) the facility's interior contained partially installed, unapproved hydraulically-controlled "Sky Dance" boxes for "motivational dancing," A137; (3) the third floor contained an unapproved cat-walk and "Jacuzzi-style tub," A137; and (4) "Plaintiffs were in the midst of installing a trapeze at the site, which [would] permit motivational dancers to swing back and forth apparently like certain New York nightclubs," A138. On February 2, 2005, following an acrimonious dispute between the plaintiffs and the Township, the Planning Board revoked the approval permits and zoning variances granted in 2002. A839.

The plaintiffs claim that the Township, and in particular, the Township Attorney, selectively and unlawfully enforced the zoning laws. They claim the Township Attorney harbored personal animus against them, exhibited by his "egomaniacal rage," A64, and expressed antipathy toward their Italian heritage. The plaintiffs allege that, despite their legitimate source of financing, the Township Attorney long suspected their project was underwritten by "Mafia Money." A64.

The plaintiffs characterize the Township Attorney's conduct as "the personal vendetta of an out-of-control Napoleonic despot intent on running West Orange as his personal fiefdom." A62. They claim he personally inspected the construction site for

3

violations, verbally harassed construction workers, and summoned the police to halt construction. A65. The plaintiffs also claim the Township Attorney used his law firm's letterhead to solicit objections to their liquor license from Township residents, and sought to impose unreasonable conditions on their license renewal (e.g., occupancy limits, early closure). A66. The plaintiffs claim the Township Attorney recused himself from participation in the plaintiffs' Alcoholic Beverage Control hearing, but nevertheless presided over the hearing, and did so without keeping minutes because "the recording unit was unplugged." A67. Finally, the plaintiffs claim the Township Attorney's conduct was anti-competitive, motivated by his law partners' ownership of a competing restaurant business. A68.

The plaintiffs filed a ten-count complaint in state court alleging violations of 42 U.S.C. § 1983 and state law.[1] In addition to the Township Attorney, the complaint named the following defendants: (1) the Township Attorney's law firm; (2) the Mayor of the Township; (3) the Director of Planning Development for the Township; (4) the Building Sub-Code Official for the Township Health Department; (5) the Township Health Inspector; and (6) the Planning Board and Council of the Township (collectively, "the

---

[1] The complaint alleged: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) violation of civil rights under 42 U.S.C. § 1983; (4) violation of civil rights under N.J. Stat. Ann. § 10:6-2(c); (5) breach of fiduciary duty; (6) legal malpractice; (7) civil conspiracy; (8) intentional infliction of emotional distress; (9) estoppel; and (10) racketeering under N.J. Stat. Ann. § 2C:41-2.

defendants"). A61. The defendants removed the action to federal district court.

The District Court, on the defendants' motion to dismiss, held that the plaintiffs failed to state a claim for legal malpractice or civil conspiracy,[2] and found that the plaintiffs abandoned their claims under the Takings Clause and Equal Protection Clause by failing to oppose the defendants' arguments for dismissal. A27-A29, A37-A38. The District Court dismissed the Commerce Clause claim because the plaintiffs failed to allege a burden on interstate commerce. A29. All other claims proceeded to discovery, after which the plaintiffs voluntarily withdrew their claim for intentional infliction of emotional distress.

While this action was pending, the plaintiffs reconsidered their refusal to seek approval from the Township and submitted an amended development proposal for review by the Planning Board. On April 1, 2009, following six public hearings, the Planning Board approved the plaintiffs' amended plans, including the enlarged site footprint, Sky Dance boxes,[3] and catwalk.

---

[2] The court dismissed the legal malpractice claim because the plaintiffs failed to allege an attorney-client relationship with the Township Attorney. A37. The court dismissed the civil conspiracy claim because the plaintiffs "failed to allege that any of the Defendants were acting outside of their official capacity when they engaged in the alleged conduct" and "Defendants, acting as agents and employees of West Orange, cannot conspire among themselves." A38.

[3] In its written Findings of Fact and Conclusions of Law, the Planning Board stated: "Since not all motivational dancers qualify as 'go go entertainers' the use of motivational dancers does not alone transform the use into a 'sexually oriented business' as defined in the ordinance. This finding was underscored by Applicant's testimony that the dancers would have no sexual contact with patrons." A614.

On July 14, 2009, the District Court granted summary judgment in favor of the defendants on all of the remaining claims.  The plaintiffs filed this timely appeal.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331.  This Court has jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6).  See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  We must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Grammar v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

We review the District Court's grant of summary judgment de novo, applying the same standard that it used.  Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  We view the evidence in a light most favorable to the plaintiffs and draw all justifiable, reasonable inferences in their favor, id., but "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  We will affirm if "there is no genuine issue as to any material fact" and the defendants are entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).

## III.

## A.

The plaintiffs appeal the District Court's dismissal of their Commerce Clause and legal malpractice claims under Federal Rule of Civil Procedure 12(b)(6).

## 1.

The District Court dismissed the Commerce Clause claim because the plaintiffs failed to allege a burden on interstate commerce. A27. To state a claim under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, a plaintiff must demonstrate that the challenged state regulation "has extraterritorial effects that adversely affect economic production (and hence interstate commerce) in other states" or "the object of the law is local economic protectionism, in that it disadvantages out-of-state businesses to benefit in-state ones." Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 462 F.3d 249, 261-62 (3d Cir. 2006) (alterations and quotations omitted). Alternatively, a plaintiff may state a claim by demonstrating that "the burden imposed on [out-of-state] commerce is clearly excessive in relation to the putative local benefits." Id. at 263.

The plaintiffs argue that the Commerce Clause precludes the Township from enforcing its municipal zoning laws because the plaintiffs' development involves elements of interstate commerce (e.g., construction workers, transportation vehicles, and commercial financial transactions) and the Township's conduct is motivated by

protectionist sentiment. However, the plaintiffs' terse argument fails to explain how the Township discriminated against out-of-state commerce or served to protect in-state economic activity. If anything, the Township's regulation adversely affected in-state economic activity by delaying construction and eventual opening of the plaintiffs' business. The District Court properly dismissed the Commerce Clause claim under Rule 12(b)(6).

2.

The District Court dismissed the legal malpractice claim because the plaintiffs failed to allege an attorney-client relationship with the Township Attorney. A37. Under New Jersey law, "attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys' representations and the non-clients are not too remote from the attorneys to be entitled to protection." Petrillo v. Bachenberg, 655 A.2d 1354, 1359-60 (N.J. 1995).

The plaintiffs argue they have properly alleged a duty of care because the Township Attorney owed them fiduciary duties in his capacity as Township Attorney. However, the complaint fails to allege any legal advice or representation rendered by the Township Attorney on which the plaintiffs detrimentally relied. The duty of care on which the plaintiffs rely arises from the Township Attorney's position as a government official, not his dispensation of legal advice to a non-client. The District Court properly dismissed the legal malpractice claim under Rule 12(b)(6).

B.

The plaintiffs appeal the District Court's grant of summary judgment in favor of the defendants on their claims for violation of civil rights under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2(c), tortious interference, breach of fiduciary duty, estoppel, and racketeering.

1.

The plaintiffs' claims under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2(c) allege violation of substantive due process. Acting under color of local zoning laws, the defendants allegedly engaged in conduct "not reasonably related to a legitimate government interest," "in fact motivated by religious bias and improper motive," and "in and of itself, egregiously unacceptable and outrageous." A72.

Civil liability for violation of substantive due process arises from "only the most egregious official conduct . . . ." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Such conduct must shock the conscience. Id. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849. "Since Lewis, our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context." United Artists Theatre Cir. v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003). In Eichenlaub v. Twp. of Indiana, for example, we held that

9

selective enforcement of zoning laws did not violate substantive due process because the township's conduct was not motivated by corruption or racial discrimination. 385 F.3d 274, 286 (3d Cir. 2004) ("The local officials are not accused of seeking to hamper development . . . because of some bias against an ethnic group.").

Here, the plaintiffs properly allege a violation of substantive due process because they claim the Township Attorney's selective enforcement was motivated by antipathy toward their Italian heritage. Depending on the gravity, context, and surrounding circumstances, selective enforcement motivated by ethnic bias may constitute arbitrary conduct capable of shocking the conscience. However, the District Court granted summary judgment because it found the plaintiffs failed to substantiate the allegations of ethnic bias.[4]

On appeal, the plaintiffs argue the District Court erred because the evidence of record contained testimony about the Township Attorney's anti-Italian statements. Numerous witnesses deposed in this matter testified that they heard the Township Attorney state that the plaintiffs were connected to the Mafia and had financed the

---

[4] The District Court explained, "Plaintiffs offer no additional statement, evidence, or proof that Defendants acted arbitrarily and capriciously to deprive them (Plaintiffs) of a property interest or that Defendants acted out of clear bias against Plaintiffs' Italian heritage. . . . . Plaintiffs offer only conjecture and unsupported allegations in support of their claims that Defendants' conduct in enforcing zoning regulations 'shocks the conscience.' . . . . This Court finds that Defendants' conduct does not shock the conscience since Defendants were merely exercising their discretion and authority to enforce zoning laws, which Plaintiffs had clearly violated." A14-A15.

10

development with Mafia money. See, e.g., A723. Although the Township Attorney's statements about the plaintiffs' purported Mafia connections, standing alone, are not per se evidence of ethnic bias, one witness testified that the Township Attorney made "general comments that Italians aren't the best of people, they're connected to the mob" in a conversation regarding the plaintiffs. A748. This testimony, if credible, creates an evidentiary connection between the Township Attorney's selective enforcement of the zoning laws and his antipathy toward the plaintiffs' Italian heritage.

While we offer no opinion as to whether the plaintiffs' allegations against the Township Attorney could be proven at trial, for purposes of summary judgment, plaintiffs' presentation of evidence that the Township Attorney's selective enforcement of municipal zoning laws was motivated by antipathy toward Italians – conduct which may shock the conscience – creates a genuine issue of material fact sufficient to survive summary judgment. The District Court, therefore, erred in granting summary judgment in favor of the Township Attorney on the plaintiffs' substantive due process claims under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2(c). However, the District Court properly granted summary judgment in favor of all other defendants in this action because the plaintiffs offered no evidence of conscience-shocking conduct by those parties.

2.

The remaining state law claims for tortious interference, breach of fiduciary duty,

estoppel, and racketeering are not cognizable because, as the District Court held, the Township was within its rights to enforce its municipal zoning laws.[5] As built, the plaintiffs' development failed to comply with the approvals and variances granted by the Planning Board, so the Township's efforts to prevent the plaintiffs from further violating the zoning laws cannot give rise to liability. Indeed, the Township identified several legitimate concerns about the dance equipment installed by the plaintiffs and the intended use for the facility.

As outlined above, if the Township Attorney selectively enforced the zoning laws because he harbored antipathy toward the plaintiffs' ethnicity, then he may be liable for depriving the plaintiffs of substantive due process under color of state law. But his alleged misconduct did not operate to cure the plaintiffs' zoning violations. The plaintiffs cannot recover damages from Township officials for their justifiable enforcement of local law.

IV.

For the foregoing reasons, we will vacate the grant of summary judgment in favor of Township Attorney Richard Trenk on the substantive due process claims (Counts III and IV) and affirm in all other respects. The action will be remanded for trial.

---

[5] The plaintiffs maintain they are entitled to relief under the doctrine of equitable estoppel, but concede that "[e]quitable relief is no longer at issue, as Appellees finally granted Appellants['] use by Resolution dated April 1, 2009 . . . ." Appellants' Br. 2. This concession is a proper basis to affirm summary judgment on the estoppel claim, even though the defendants did not assert this point on appeal.