PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1466
_____

DOROTHY RHUE ALLEN,
by her Attorney in fact, James Martin,
Individually and as a class representative on behalf
of others similarly situated,

Appellant

v.

LASALLE BANK, N.A;
CENLAR FEDERAL SAVINGS BANK FSB;
FEIN, SUCH, KAHN AND SHEPARD, PC;
JOHN DOE SERVICERS 1-100;
JOHN DOE LAW FIRMS 1-100
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-08-cv-02240)
District Judge: Honorable Anne E. Thompson
_____

Argued September 14, 2010

Before: SLOVITER, BARRY, and SMITH
Circuit Judges

(Filed: January 12, 2011)
_____

Lewis G. Adler  (Argued)
Woodbury, N.J.  08096

Roger C. Mattson
Woodbury, N.J.  08096

    Attorneys for Appellant

Andrew C. Sayles  (Argued)
Gregory E. Peterson
Connell Foley
Roseland, N.J.  08068

    Attorneys for Appellee Fein, Such, Kahn and Shepard,
    P.C.

Daniel C. Green
Vedder Price
New York, N.Y.  10019

Chad A. Schiefelbein  (Argued)
Vedder Price
Chicago, IL  60601

    Attorneys for Appellee LaSalle Bank

Gregory A. Lomax
Christopher L. Soriano
Morgan J. Zucker
Duane Morris
Cherry Hill, N.J.  08003

    Attorneys for Appellee Cenlar Federal Savings Bank

_____

OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

This appeal presents the question whether a communication from a debt collector to a consumer's attorney is actionable under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(1).

## I.

### Factual and Procedural History

In 1976, Dorothy Rhue Allen purchased her home with a 30-year mortgage. After Allen failed to make the last payment due, she was declared in default. On May 7, 2007, Fein, Such, Kahn & Shepard, PC ("FSKS"), a law firm, brought a mortgage foreclosure action against Allen on behalf of LaSalle Bank.[1]

At the request of Allen's attorney, FSKS sent a letter to Allen's attorney on June 7, 2007 that set forth a payoff quote for the principal balance remaining on the loan and other charges due to the servicer of Allen's loan, Cenlar Federal Savings Bank ("Cenlar"), as well as charges for FSKS's attorney fees and costs. The same day, FSKS sent a second letter to Allen's attorney itemizing the attorney fees and costs referred to in its previous letter. Less than three weeks later, Allen filed a class action counterclaim and third party complaint in the foreclosure action, asserting that FSKS's response violated the FDCPA and state law. LaSalle and FSKS then released the mortgage and moved to dismiss the foreclosure action, after which the New Jersey Superior Court dismissed Allen's claims without prejudice.

Some time thereafter, Allen filed a class action against FSKS, LaSalle, and Cenlar in the United States District Court

---

[1] Although Allen alleged in her Complaint that LaSalle Bank was her mortgage lender at the time of her default, she also asserted that LaSalle took assignment of Allen's mortgage from Security Pacific National Bank on June 12, 2007, after FSKS filed the mortgage foreclosure action.

for the District of New Jersey. In the Complaint, Allen alleged that FSKS and LaSalle violated the FDCPA and state law, and that Cenlar also violated state law. For example, Allen alleged that FSKS demanded: $910 in attorney fees when court rule permits only $15.43, $335 for searches when court rule permits only $75, $160 for recording fees when the actual fee was only $60, and $475 for service of process when statute and court rule limit reimbursement to $175. Although she made other specific and general FDCPA allegations in her Complaint, Allen conceded at oral argument that her FDCPA claims were predicated only upon alleged violations of 15 U.S.C. § 1692f(1).

FSKS moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Allen had failed to state a claim upon which relief could be granted. FSKS asserted that a communication from a debt collector to a consumer's attorney is not covered by the FDCPA.[2]

The District Court noted that the courts of appeals are divided on this issue. The Fourth Circuit has held that a communication with a debtor's attorney is to be treated as an indirect communication with the debtor and therefore actionable. *Sayyed v. Wolfpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007). In contrast, the Second Circuit has stated in dicta and the Ninth Circuit has concluded that because an attorney will protect a consumer from a debt collector's behavior, statements made only to a consumer's attorney are not actionable per se. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934-39 (9th Cir. 2007); *Kropelnicki v. Siegel*, 290 F.3d 118, 129-31 (2d Cir. 2002).

---

[2] Cenlar and LaSalle independently moved to dismiss. LaSalle moved to dismiss on the ground that Allen had failed to state an agency relationship between it and FSKS because LaSalle took assignment of Allen's mortgage only after FSKS sent the letters to Allen's attorney. Cenlar moved to dismiss the state law claims because of the lack of contract between Allen and Cenlar and because Allen alleged no damages.

Eschewing either approach, the District Court found persuasive the Seventh Circuit's analysis in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007), where the court held that although a communication from a debt collector to a consumer's attorney is governed by the FDCPA, it is to be analyzed from the perspective of a competent attorney. Using that reasoning, the District Court held that a competent attorney would have readily recognized the overcharges that FSKS sought. The Court concluded that because Allen's attorney protected her from any unfair or unconscionable means used to collect the debt, Allen had failed to state viable FDCPA claims. The Court thus dismissed those claims and abstained from passing on the alternative arguments set forth by FSKS and LaSalle in support of their motions to dismiss. With no federal claims remaining, the Court declined to exercise supplemental jurisdiction over Allen's state law claims. Allen appeals.[3]

## II.

### Jurisdiction and Standard of Review

We conduct a plenary review of the District Court's order granting a motion to dismiss for failure to state a claim. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). We accept all factual allegations in the Complaint as true, construe it in the light most favorable to Allen, and determine whether, under any reasonable reading of the Complaint, Allen may be entitled to relief. *See id.*

Because this case requires us to construe a congressional statute, principles of statutory construction apply. To discern Congress' intent we begin with the text. *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009). If the statute's plain language is unambiguous

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

and expresses that intent with sufficient precision, we need not look further. *Id.* If the plain language fails to express Congress' intent unequivocally, however, we will examine the surrounding words and provisions in their context. *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004). Assuming that every word in a statute has meaning, we avoid interpreting part of a statute so as to render another part superfluous. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).

## III.

## Analysis

Congress made its purpose in enacting the FDCPA explicit: "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692f(1) on which Allen relies provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f.[4]

---

[4] Notably, § 1692f(1) specifically prohibits the "collection" of any unauthorized amount and Allen alleges only that FSKS and LaSalle attempted to collect such

Attorneys, such as FSKS, are regarded as debt collectors, and their conduct as such is regulated by the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("the term 'debt collector' . . . applies to [attorneys] who 'regularly,' *through litigation*, tr[y] to collect consumer debts"). The Act entitles consumers to certain information regarding the nature of their debts, § 1692g, and prohibits debt collectors from engaging in certain conduct, *see* §§ 1692c-1692f, 1692j-1692k. The FDCPA is a remedial statute, and we construe its language broadly so as to effect its purposes. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). Section 1692e proscribes "*any* false, deceptive or misleading representation," (emphasis added), and § 1692d similarly condemns "*any* conduct the natural consequence of which is to harass, oppress, or abuse any person," (emphasis added).

A "consumer" includes "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). A "communication" constitutes "the conveying of information regarding a debt directly *or indirectly* to any person through any medium."[5] § 1692a(2) (emphasis added). The focus of § 1692f is on the conduct of the debt collector.

---

amounts from her. Section 1692f, however, broadly prohibits improper means "to collect or attempt to collect" any debt, and its list of violative conduct in § 1692f is not exhaustive. Thus, "collection" in § 1692f(1) includes attempted collection as well as actual collection.

[5] The two letters FSKS sent on June 7, 2007 undoubtedly fall within this definition. FSKS disputes in a footnote the characterization of the third letter, which was sent the next day and itemized FSKS's fees and costs, as a communication within the meaning of the FDCPA because it "does not make any specific request for payment." Br. of Appellee FSKS at 26 n.9. A communication, however, is "the conveying of information regarding a debt" and is not limited to specific requests for payment. § 1692a(2).

As noted above, the issue here is whether § 1692f(1) governs communications from a debt collector to a consumer's attorney, such as FSKS's letters to Allen's attorney. The attorney for FSKS conceded at oral argument that there is nothing in the FDCPA that explicitly exempts communications to an attorney. Unquestionably, the scope of the FDCPA is broad. Indeed, § 1692f(1) prohibits "unfair or unconscionable means," regardless of the person to whom the communication was directed. The FDCPA similarly defines a "communication" expansively. A communication to a consumer's attorney is undoubtedly an indirect communication to the consumer. *Evory*, 505 F.3d at 773 (quoting § 1692a(2)); *see also Sayyed*, 485 F.3d at 232-33.[6]

The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation.[7]

---

[6] We depart from the reasoning of the Fourth Circuit in *Sayyed* that the Supreme Court's decision in *Heintz* supported its conclusion that communications from a debt collector to a consumer's attorney are governed by the FDCPA. *See Sayyed*, 485 F.3d at 230. The Court in *Heintz* addressed the narrow issue of whether the term "debt collector" in the FDCPA applies to attorneys who regularly, through litigation, try to collect consumer debts. *Heintz*, 514 U.S. at 292. Although the *Heintz* opinion referred to the fact that the communication there had been sent to the consumer's attorney, the Court did not pass on the precise question before us. *See Guerrero*, 499 F.3d at 937-38 (criticizing *Sayyed*'s use of *Heintz*).

[7] The characterization of the FDCPA as a strict liability statute is generally accepted. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

*See* § 1692k. If an otherwise improper communication would escape FDCPA liability simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability.

In this case, the District Court sub silentio concluded that a communication from a debt collector to a consumer's attorney was generally covered by the FDCPA but that it is to be analyzed from the perspective of a competent attorney. The District Court, however, did not have the benefit of Allen's concession that her claims were predicated only upon § 1692f(1), which defines the collection of an unauthorized debt as a per se "unfair or unconscionable" debt collection method. The only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law, an issue we leave for the District Court.

Given the nature of its disposition, the District Court did not address any of the other issues raised by the parties, including whether New Jersey's litigation privilege creates an exemption to FDCPA liability, an issue raised by FSKS. We address this argument briefly because it raises an issue of law which is likely to arise on remand.

New Jersey's litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (internal quotations and citations omitted). FSKS's letters here undoubtedly fall within this definition. Nonetheless, the FDCPA does not contain an exemption from liability for common law privileges. "[C]ommon law immunities cannot trump the [FDCPA]'s clear application to the litigating activities of attorneys," *Sayyed*, 485 F.3d at 231, and, like the Fourth Circuit, we will not "disregard the statutory text in order to imply some sort of common law privilege," *id.* at 229; *see also Hartman v. Great Seneca Fin. Corp.*, 569 F.3d

9

606, 615-17 (6th Cir. 2009). The application of the New Jersey litigation privilege does not absolve a debt collector from liability under the FDCPA.

Although we remand this case to the District Court, we reiterate that we express no opinion as to whether Allen has alleged a viable claim. If the agreement does not expressly authorize or state law does not permit the amounts sought, Allen has stated a viable claim under § 1692f(1).

In light of our disposition, on remand the District Court should reconsider whether to exercise supplemental jurisdiction over Allen's state law claims, whether to consider the alternative grounds for dismissal set forth in the motions to dismiss, and whether to certify a class, as requested by Allen.

## IV.

## Conclusion

For the foregoing reasons, we will vacate the judgment of the District Court and remand for proceedings consistent with this decision.