**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4526
_____

JESSE VELASQUEZ,
                              Appellant

v.

COMMISSIONER GEORGE W. HAYMAN;
CHIEF ADMINISTRATOR KAREN BALICKI;
DR. ALLEN MARTIN; LYNN KWEPP, Nurse Director;
DENISE JANE DOE, Nurse; TERRY JANE DOE, Nurse;
CORRECTIONAL MEDICAL SERVICES, (C.M.S.);
ST. FRANCIS MEDICAL CENTER;
SOUTH JERSEY MEDICAL CENTER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:09-cv-03230)
District Judge: Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 2013

Before:  SMITH, GARTH and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 20, 2013)
_____

OPINION
_____

PER CURIAM

Jesse Velasquez appeals pro se from the District Court's order granting the defendants' motion for summary judgment. For the following reasons, we will affirm.

I.

Velasquez, a paraplegic, alleges that while he was a New Jersey state prisoner, the following events occurred. In May 2008, Velasquez complained to a prison nurse that he was experiencing swelling in his right leg and foot, but his complaint was ignored. A month later, he was examined by a prison doctor, Dr. Allen Martin, who diagnosed a blood clot but did not confirm this with an ultrasound. Instead, Dr. Martin prescribed Velasquez two anticoagulants, injected a "blood thinner" into his stomach, and gave him a lymphedema pump to stimulate blood flow and reduce the swelling. Over the next three weeks, however, the bleeding worsened and spread to other areas of his body. During that time, Dr. Martin discontinued the medications and the lymphedema pump. Velasquez asked several times to be transferred to a hospital for more effective treatment, but his requests were denied. On June 30, 2008, Velasquez met with the prison's Nurse Director, Joy Lynn Kwepp, and relayed his complaints to her. On July 1, 2008, when his bleeding worsened, Dr. Martin finally transferred Velasquez to South Jersey Regional Medical Center. Thereafter, Velasquez was transferred to St. Francis Medical Center.

In July 2009, Velasquez filed a complaint against Correctional Medical Services (C.M.S.), St. Francis Medical Center, South Jersey Medical Center, and various doctors, nurses and prison employees. He raised federal claims under 42 U.S.C. § 1983, including allegations that the defendants were deliberately indifferent to his medical needs, and

2

Title II of the ADA, 42 U.S.C § 12132, and medical malpractice claims under New Jersey law.

The District Court screened the complaint and dismissed claims against several defendants.[1] The four remaining defendants—Dr. Martin, Nurse Director Kwepp, C.M.S., and St. Francis—moved for summary judgment. The District Court granted summary judgment in favor of the defendants, determining that Velasquez failed to exhaust his administrative remedies prior to commencing suit. The Court also noted that Velasquez failed to state claims against Kwepp, C.M.S., and St. Francis, but it thought the claims against Dr. Martin were more potentially meritorious. Velasquez timely appealed.

II.

We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over the District Court's entry of summary judgment in favor of the defendants. See Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all

---

[1] The District Court dismissed Velasquez's Eighth Amendment claims against two of the originally-named defendants because they relied on principles of *respondeat superior*, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); it dismissed his failure-to-train-or-supervise claims because he pointed to no facts suggesting (1) a deficiency in training and (2) a causal connection between the deficiency and his injury, see Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999); and it dismissed his ADA claims, see 42 § 12132, and state-law medical malpractice claim against South Jersey Regional Medical Center for failure to allege that he suffered injury or damages resulting from his care at that facility. Reviewing this order de novo, Gelman v. State Farm Mut. Auto. Ins. Co.,

inferences in favor of that party, no genuine issue of material fact exists. <u>See</u> Fed. R. Civ. P. 56(c); <u>Saldana</u>, 260 F.3d at 231.

### 1. Dr. Martin

The record indicates that Dr. Martin was not deliberately indifferent to Velasquez's medical needs. Velasquez alleged that Dr. Martin improperly diagnosed and treated his wounds, overmedicated him with anticoagulants and blood thinners, and should have transferred him to a hospital sooner than he did. Velasquez admitted that Dr. Martin did treat his condition, just not to his satisfaction. Mere disagreement, however, between prison doctors and a prisoner about the proper course of treatment does not evince the deliberate indifference necessary for an Eighth Amendment violation. <u>See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987). A prison official is not deliberately indifferent unless he "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Tellingly, the record does not indicate that Dr. Martin's decisions were a result of anything but medical judgment. <u>See</u> <u>Lanzaro</u>, 834 F.2d at 346; <u>see also</u> <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (noting that courts

---

583 F.3d 187, 190 (3d Cir. 2009), for substantially the reasons given by the District Court we find no error in this judgment.

4

generally will not gainsay the professional judgment of medical practitioners). And Velasquez conceded that Dr. Martin was in fact treating him continuously. On June 11, 2008—the day that Dr. Martin learned of Velasquez's bleeding and swelling—Dr. Martin prescribed him medication and ordered blood testing to monitor the medication, and two days later he ordered more blood testing. (Defs.' Mot. for Summ. J. ¶¶ 25-26.) Dr. Martin halted use of one of the anticoagulants shortly thereafter, discontinued use of the lymphedema pump on June 24, 2008, and halted use of the other anticoagulant approximately on June 28, 2008. (Defs.' Mot. for Summ. J. ¶¶ 29, 35.) Throughout this period, Dr. Martin had ordered several more blood tests and continued monitoring Velasquez's condition. (Defs.' Mot. for Summ. J. ¶¶ 34-35.) Early in the morning on July 1, 2008, when Velasquez's bleeding worsened, Dr. Martin finally had him transferred to South Jersey Regional Medical Center. (Defs.' Mot. for Summ. J. ¶ 37.) Velasquez does not contest these assertions, none of which imply deliberate indifference. Accordingly, the record does not support Velasquez's Eighth Amendment claim.

### 2. Kwepp

Likewise, the record does not support Velasquez's Eighth Amendment claim against Kwepp. He alleged that Kwepp was present on June 30, 2008, when he asked to be taken to the hospital but was initially denied and that she was involved in the decisions related to his condition. In his deposition, however, Velasquez claimed that he was suing her because she supervised the nursing staff. (Defs.' Mot. for Summ. J. ¶ 46.) But

liability under § 1983 requires personal participation in unlawful conduct and "cannot be predicated solely on the operation of *respondeat superior*." Rode, 845 F.2d at 1207.

We also agree with the District Court that no genuine issue of material fact exists as to Velasquez's state medical malpractice claim against Kwepp.[2] He failed to produce an affidavit from a licensed medical professional, as is required in order to state a claim of medical malpractice under New Jersey law. See N.J. Stat. Ann. § 2A:53A-27.

### 3. C.M.S. & St. Francis

Velasquez alleged that employees of C.M.S. and St. Francis exacerbated his injuries because they were "just trying to find a shortcut for saving money from medical services," seeking to attribute those employees' actions to C.M.S. and St. Francis. But *respondeat superior* liability cannot attach to C.M.S. and St. Francis for the acts of their employees. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003); Rode, 845 F.2d at 1207. Rather, Velasquez needed to show that they had policies or customs of denying necessary medical care. See Natale, 318 F.3d at 583-84. The record is bereft of any facts suggesting that C.M.S. and St. Francis had such policies or customs.

---

[2] The District Court was permitted to retain supplemental jurisdiction over the state-law claim. See 28 U.S.C. § 1367; Bright v. Westmoreland Cnty., 443 F.3d 276, 286 (3d Cir. 2006) (District Courts may exercise supplemental jurisdiction after dismissing federal claims if "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so").

For the reasons given, we will affirm the judgment of the District Court.[3]

---

[3] Because Velasquez's claims fail on the merits, we need not reach the question of exhaustion.