Melissa Catherine WILLIAMS, Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., et al., Defendants.

CIVIL ACTION NO. 16-991

United States District Court, E.D. Pennsylvania.

Signed 08/09/2016

Geoffrey V. Seay, Law Office Of Geoffrey V. Seay, Philadelphia, PA, for Plaintiff.

Cathleen Kelly Rebar, Jeannie Park Lee, Stewart Bernstiel Rebar & Smith, Blue Bell, PA, Joseph G. Fulginiti, Commonwealth of PA, Mechanicsburg, PA, Barry N. Kramer, PA Office of Atty General, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge

Plaintiff Melissa Catherine Williams brings federal and state law claims against a number of parties due to medical treatment she received while incarcerated at a state prison. Defendants have filed motions to dismiss. For the reasons that follow, the Court will grant the motions and dismiss all of Plaintiff's claims as time-barred.[1]

## I. BACKGROUND

The Corrected First Amended Complaint alleges the following facts:

Plaintiff Melissa Williams is a former inmate at the Pennsylvania State Correctional Institute at Muncy, Pennsylvania ("SCI-Muncy").[2] For several months in 2012 and 2013, Plaintiff was under the medical care of Defendant Dr. Gregory Famiglio ("Dr. Famiglio" or "Famiglio")— who was employed by Defendant Wexford Health Sources, Inc. ("Wexford"),[3] Corrected First Am. Compl. ¶ 5, ECF No. 17—for interstitial pneumonitis, rheumatoid arthritis, and other medical conditions. Id. ¶ 15. In the course of that treatment, Dr. Famiglio prescribed large doses of antibiotics and other medications, even though "[t]he prescribing of antiobiotics for Rheumatoid Arthritis is contrary to standard medical practice." Id. ¶¶ 16-17. As a result, Plaintiff's lungs were damaged and she became extremely sick. Id. ¶¶ 16, 18-19. She made numerous requests for medical treatment, but her complaints were largely ignored by Dr. Famiglio, other Wexford staff members, and employees of SCI-Muncy. Id. ¶ 21. Eventually, she lapsed into a coma and was hospitalized for at least 45 days beginning on May 18, 2013. Id. During her hospitalization, she was informed by other doctors that she had degenerative lung disease caused by improper doses and types of antiobiotics, and that she would die without lung transplants. Id. ¶¶ 22-23.

When Plaintiff was discharged from the hospital, she returned to SCI-Muncy and was placed in the infirmary. Id. ¶ 24. While there, she confronted Dr. Famiglio about his prescriptions. Id. ¶ 26. In response, he yelled at Plaintiff and said, "I don't know what antibiotic I used." Id. ¶ 27. Plaintiff has since made numerous requests for Defendants to identify the medications she was prescribed, but those requests have not been fulfilled. Id. ¶ 28.

Plaintiff was paroled on December 22, 2013. Id. ¶ 33.[4] That day, Plaintiff was

---

1. At the August 1, 2016, hearing on the motions to dismiss, the Court stated from the bench that it intended to grant the motions and dismiss Plaintiff's claims. This memorandum explains in further detail the Court's rationale for its decision, and the accompanying order serves the purpose of actually dismissing the claims.

2. Plaintiff does not state when she entered SCI-Muncy, but she left the prison on December 22, 2013. Corrected First Am. Compl. ¶ 33, ECF No. 17.

3. It appears from the Complaint that Wexford was contracted by the Pennsylvania Department of Corrections to provide medical services at SCI-Muncy. Id. ¶ 49.

4. Before her release, Dr. Famiglio made a written statement on a Pennsylvania Department of Public Welfare form that Plaintiff was suffering from "Rheumatoid Interstitial Pneumonitis," from which she might die. Id. ¶ 34.

driven home by Defendant Melissa Fisher—a nurse—and Defendants Jane Doe and John Doe, all of whom are employed by Defendant Commonwealth of Pennsylvania ("the Commonwealth"). Id. ¶ 38. During the entire trip, Plaintiff was on life-sustaining oxygen and the Does and Fisher knew that she needed that oxygen to sustain her life. Id. ¶¶ 39-40. Nonetheless, they left her on her porch without access to oxygen equipment. Id. ¶ 41. When Plaintiff asked about the oxygen, Defendants Does and Fisher told her that it was inside her house. Id. ¶ 42. However, because Defendants had failed to inform Plaintiff's family that she was being paroled that day, no one was home when Plaintiff arrived. Id. ¶ 43. As a result, Plaintiff was stuck on the porch with no oxygen, suffering severe shortness of breath, while the Does and Fisher "laughed at her and left" her there. Id. ¶ 44. Plaintiff then had to be taken to the emergency room at a local hospital, where she stayed for a couple of days. Id. ¶ 46.

Plaintiff is currently awaiting a double lung transplant and may die while waiting. Id. ¶ 48.

Plaintiff further alleges that Defendants "have a well-documented history of covering up" their negligence and deliberate indifference, and that, while Plaintiff was in the infirmary, Defendants kept her in isolation for no medical or penological reason in order to conceal their negligence and deliberate indifference. Id. ¶¶ 29-32. Moreover, she says, Wexford has a history of "corporate negligence and fraud," "employing unqualified and uncaring doctors," and "intentionally, maliciously, recklessly, and in callously [sic] indifferently prescribing inmates improper medications causing injuries." Id. ¶¶ 49-51. Nonetheless, the Commonwealth entered into contracts with Wexford for Wexford's services at SCI-Muncy, demonstrating callous indifference to Plaintiff's rights. Id. ¶¶ 49, 51.

Plaintiff filed a Writ of Summons in the Court of Common Pleas of Philadelphia County on May 22, 2015, and then a Complaint in the same court on January 27, 2016. Wexford & Famiglio Mot. Dismiss Ex. B, ECF No. 5-4. Defendants removed the Complaint to this Court on March 2, 2016. Id. Plaintiff has since filed a Corrected First Amended Civil Rights Complaint, ECF No. 17, bringing eight counts: (1) corporate negligence, against Wexford; (2) medical malpractice, against Wexford, Dr. Famiglio, Doe Defendants employed by Wexford, and other Wexford staff; (3) medical malpractice, against Defendant Diggan, a nurse at SCI-Muncy; (4) medical malpractice, against Fisher; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) violation of the Eighth Amendment, against all medical Defendants; and (8) violation of the Americans with Disabilities Act, against all Defendants.

There are three motions to dismiss: one from Wexford and Dr. Famiglio, ECF No. 19; one from Fisher, ECF No. 20; and one from the Commonwealth, ECF No. 29. All are ripe for disposition.

## II. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." De-Benedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir.2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "requires more than labels and con-

clusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

## III. DISCUSSION

██ All Defendants contend that Plaintiff's claims should be dismissed because they are barred by the statute of limitations. Plaintiff concedes that all of her claims are subject to a two-year statute of limitations. Pl.'s Mem. Law Opp'n 7, ECF No. 26. The ultimate question is whether Plaintiff filed this action in time.[5]

██ First, the Court must determine when the statute of limitations began to run. In Pennsylvania, as a general rule, "a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." Wilson v. El-Daief, 600 Pa. 161, 964 A.2d 354, 361 (2009). In this case, the alleged injury was inflicted when Dr. Famiglio initially prescribed improper medications to Plaintiff. However, "[i]n certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct." Id. at 361–62.

██ Here, taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, there is no reason that Plaintiff could or should have discovered that her injuries were due to improper medications until after she awoke from the coma and was informed of that fact by hospital doctors. When exactly this occurred is somewhat unclear. Plaintiff was hospitalized for at least 45 days—that is,

---

5. Ordinarily, a plaintiff "need not try to plead around defenses," such as a statute-of-limitations defense. Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir.2014) (quoting Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir.2003)). However, "a Rule 12(b) motion can be utilized when the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975).

In this case, the Complaint clearly states when the final factual allegations occurred, such that it is clear when, at the latest, the statute of limitations began to run. Indeed, there is no dispute over the relevant facts concerning the commencement of the limitations period or the commencement and service of this action; the only question is the legal significance of those facts. Thus, the Court may resolve this statute of limitations issue at the motion to dismiss stage. Plaintiff has not argued otherwise.

until at least July 2, 2013—but she does not state how long she was in a coma or on what date she learned the cause of her condition from the doctors. Accordingly, Plaintiff's cause of action may have accrued sometime between May 18, 2013, and July 2, 2013. Potentially, it accrued even later, when she confronted Dr. Famiglio about his prescriptions and learned that he did not know what he had prescribed. Certainly, at the latest—as all parties agree—Plaintiff's cause of action accrued on December 22, 2013, when Plaintiff was released from SCI-Muncy. Therefore, there is no genuine dispute of fact that, at the very latest, the statute of limitations ran on December 22, 2015.[6]

The next question is when Plaintiff filed this action. The parties agree that Plaintiff attempted to initiate her action by filing a Writ of Summons ("the Writ") in state arbitration court on May 22, 2015. They disagree, however, as to whether this filing tolled the statute of limitations. If it did not, Plaintiff's claims fail, because she did not then file and serve her Complaint until January 27, 2016, which is outside the statutory period.

Pennsylvania Rule of Civil Procedure 401(a) provides that "[o]riginal process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint." Pa. R. Civ. P. 401(a). However, if the plaintiff fails to serve the defendants within thirty days, she may reissue the writ "at any time." Id. (b)(2). She may also file a writ and then later file a complaint. If so, the complaint serves as the "equivalent of a reissuance of the writ, and the plaintiff may use either the reissued writ or the reinstated complaint as alternative original process." Id. (b)(5).

In this case, Plaintiff filed the Writ on May 22, 2015. However, she did not serve the Writ upon Defendants at any time. Instead, on January 27, 2016—outside the statute of limitations—she filed a new Complaint, supplanting the previous Writ. Wexford & Famiglio Mot. Dismiss Ex. B at 4, ECF No. 5-4. She then served that Complaint upon Defendants on February 12, 2016 (which was, in compliance with Rule 401(a), within thirty days of the filing of the Complaint). Id. at 4-5.

Plaintiff argues that under Rule 401, she revived her Writ by filing the Complaint, such that she tolled the statute of limitations as of the date she first filed the Complaint. In other words, Plaintiff reads Rule 401(b)(5) either to mean that a statute of limitations is retroactively tolled when an unserved writ is reissued, or to mean that the filing of a writ itself, regardless of whether the writ is served, tolls the statute of limitations. This interpretation is incorrect.

If a statute of limitations could be retroactively tolled whenever a writ is finally served on a defendant, or if a statute of limitations is tolled whenever a writ is simply filed, regardless of whether it is ever served, statutes of limitations would lose virtually all meaning. Under this theory, a plaintiff could file a writ, do nothing for 20 years, then reissue the writ, serve the writ upon defendants, and proceed with her case.[7] See McCreesh v. City of Philadelphia, 585 Pa. 211, 888 A.2d 664, 671 (2005) (noting that "the plain language of [Rule 401(b)] allows a plaintiff to com-

---

6. Some Defendants argue that the statutory period ran even earlier; Plaintiff concedes that it ran no later than December 22, 2015. Pl.'s Mem. Law Opp'n 10, ECF No. 26. Most likely, the exact date actually varies a bit by defendant—the limitations period may have run earlier for Dr. Famiglio, for example—but

for the reasons discussed below, those potential distinctions are irrelevant.

7. At one time, Pennsylvania courts recognized a more limited version of this theory: the "equivalent period" doctrine, in which a "statute of limitations is tolled once a prae-

mence an action, thereby satisfying the statute of limitations, and yet to delay the provision of notice of the claim to the defendant interminably, thus undermining the purpose of the statute of limitations"). For this reason, court have devised the rule that "[o]nce an action is commenced by writ of summons or complaint the stat-

ute of limitations is tolled only if the plaintiff then makes a good faith effort to effectuate service." Englert v. Fazio Mech. Servs., Inc., 932 A.2d 122, 124 (Pa.Super.Ct.2007).[8]

■ Again, Plaintiff's filing and service of the Complaint (on January 27, 2016, and

cipe for writ of summons or complaint is filed," then the plaintiff "has a period of time equal to that of the original statute of limitations in which to serve the writ or complaint." Forcine v. O'Connor, 23 Pa. D. & C.4th 446, 447 (Pa.Ct.Cm.Pls.1995). More recently, however, Pennsylvania courts (including the court in Forcine, which Plaintiff cites), have ceased use of this doctrine. See, e.g., Witherspoon v. City of Philadelphia, 564 Pa. 388, 768 A.2d 1079, 1083–84 (2001) ("At this juncture, it becomes appropriate to reassess the wisdom of the 'equivalent period' doctrine. In light of the changes in practice and in application of the rules..., we fail to see any justification for the continuation of this common law doctrine in present circumstances. The notion that an action can be 'kept alive' for the same period of time as the applicable limitations period although the defendant has not been made aware of the action, is inherently inconsistent with the requirement that the plaintiff make a good faith attempt to notify the defendant of the action. It is also contrary to the policy underlying limitations periods as a whole...."). In its place, the courts imposed a "good faith" requirement, as discussed more fully below.

8. Similarly, Plaintiff's argument that the local rules save her claims also fails. Those rules state, in relevant part, that "[i]f a complaint has not been filed or served by the date of the scheduled hearing, the case will be assigned to an arbitration panel with instructions to enter an award in favor of the defendant, unless counsel has complied with Phila. Civ. R. *1303(b)(5)(i) and obtained a relisting prior to the Arbitration Hearing date." Phila. Cty. Local R. *1303(j). Plaintiff contends that this rule allowed her to reissue and serve the Writ any time before the date of the scheduled arbitration hearing (which was originally February 22, 2016).

Plaintiff reads Local Rule *1303(j) far too expansively. The rule, quite plainly, does not speak to service deadlines. Rather, it simply addresses the situation, for the benefit of the

arbitration process, when a complaint has not been served before an arbitration hearing is set to take place. Indeed, Local Rule *1303 is entitled "Scheduling of Arbitration Hearings[,] Relistings[,] Consolidations." The necessity of this rule is made clear by the docket in this case, which reveals that an arbitration date was set only four days after Plaintiff filed her Writ, even though she had not yet served Defendants. Wexford & Famiglio Mot. Dismiss Ex. B at 4, ECF No. 5-4. Clearly, arbitration cannot occur if the defendants have not even been served with the complaint—yet, if arbitration hearings are scheduled upon filing and not upon service, it is then inevitable that, in some situations, plaintiffs will fail to effect service by the time the scheduled arbitration date comes around. This local rule apparently seeks to provide a solution for that problem.

Moreover, the rule does not say anything the Pennsylvania Rules of Civil Procedure do not already say about the timeline for service—indeed, Local Rule *1303(j) is entirely consistent with the Pennsylvania rules. Under Pennsylvania Rule 401(b)(2) and (5), a plaintiff may continue to reissue a writ until she finally serves it. It is thus conceivable that a plaintiff, in full compliance with both the local rules and the Pennsylvania rules, might file a complaint in arbitration court, then reinstate the complaint every 30 days until finally serving it shortly before the arbitration hearing is scheduled to occur. In that sense, it is true that Plaintiff had until the arbitration hearing to file and serve her Complaint.

But the timeliness of a complaint with respect to an arbitration hearing is distinct from the timeliness of a complaint with respect to a statute of limitations. Critically, neither the local rule nor the Pennsylvania rules state that service, whenever it occurs, retroactively tolls the statute of limitations as of the very first filing of the writ. To the contrary, service (or a good faith attempt at service) tolls the statute as of the date the writ was reissued. If the writ is reissued after the statutory period,

February 12, 2016, respectively) fell outside even the most generous construction of the statutory period, which ended on December 22, 2015. Had Plaintiff filed her Complaint—which, under Rule 401(b)(5), served as a reissuance of the Writ—before the running of the statute of limitations, and served it within thirty days, her claims would survive, even though she had never served the Writ. But as is, her claims can survive only if she made a good faith effort to effectuate service before the statutory period ran. See Witherspoon v. City of Philadelphia, 564 Pa. 388, 768 A.2d 1079, 1080–84 (2001) (holding that claims were time-barred where the plaintiff filed a writ in time and made only one failed attempt to serve it, then did not reissue and properly serve the writ until the statutory period had run); Trivitt v. Serfass, No. 1596 MDA 2014, 2015 WL 6684623, at *4–9 (Pa.Super.Ct. Aug. 21, 2015) (holding that claims were time-barred where the plaintiffs filed a complaint and failed to make good faith efforts to serve it before the statute of limitations ran out, then reinstated it and effected service after the statute of limitations ran out). Here, on May 22, 2015, the same day she filed the Writ, Plaintiff faxed and mailed the Writ to SCI-Muncy. The issue, then, is whether those efforts were in "good faith."

■■ The question of "[w]hat constitutes a 'good faith' effort to serve legal process is a matter to be assessed on a case by case basis." Englert, 932 A.2d at 124 (quoting Moses v. T.N.T. Red Star Express, 725 A.2d 792, 796 (Pa.Super.Ct.1999)). The decision is "in the sound discretion of the trial court." McCreesh, 888 A.2d at 672. "It is the plaintiff's burden to demonstrate that his efforts were reasonable." Bigansky v. Thomas Jefferson Univ. Hosp., 442 Pa.Super. 69, 658 A.2d 423, 433 (1995). Pennsylvania courts have noted that "[s]imple neglect and mistake to fulfill the responsibility to see that requirements for service are carried out may be sufficient" to find that a plaintiff did not act with good faith. Englert, 932 A.2d at 124 (quoting Devine v. Hutt, 863 A.2d 1160, 1168 (Pa.Super.Ct.2004)). Moreover, "conduct that is unintentional that works to delay the defendant's notice of the action may constitute a lack of good faith on the part of the plaintiff." Id. at 124–25 (quoting Devine, 863 A.2d at 1168). In other words, there may be a lack of good faith "even where the plaintiff did not intentionally delay notifying the defendant of the institution of the lawsuit." Witherspoon, 768 A.2d at 1081.

In this case, while it is true that Plaintiff did not do nothing, she did not do much, and several considerations weigh against a finding of good faith.

First, Pennsylvania requires personal service—that is, "handing a copy to the defendant" or to another authorized adult, Pa. R. Civ. P. 402(a)—and does not authorize service by fax or mail,[9] unless de-

---

the claims do not survive the statute of limitations. As discussed in this memorandum, Pennsylvania case law makes this requirement clear. See, e.g., Witherspoon, 768 A.2d at 1080–84. And if Local Rule *1303(j) said otherwise—which it does not—it would be invalid as inconsistent with the Pennsylvania Rules of Civil Procedure. See Davies v. Se. Pa. Transp. Auth., 865 A.2d 290, 293–94 (Pa. Cmwlth.Ct.2005).

In summary, this local rule does not stand for the proposition that a plaintiff survives a statute of limitations so long as she serves her complaint before her scheduled arbitration hearing. Accordingly, Local Rule *1303(j) has no impact on the Court's analysis.

9. Plaintiff's argument that she needed to rely on fax and mail because she could not personally serve Defendants inside the prison is unavailing in light of the facts that (1) each defendant could have been served at a location other than the prison and (2) Plaintiff found a way to properly serve the same defendants the following February, when she filed and served the Complaint.

fendants fill out a separate document accepting service. Id. (b). Therefore, while Plaintiff might have attempted to provide notice of the Writ through her fax and mailing, Pennsylvania law would not have permitted actual service through those documents. And while it is true that attempts to provide notice may support a finding of good faith if there is evidence that notice was actually received, see McCreesh, 888 A.2d at 674 ("Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice."), there is no evidence here that any of the defendants did receive, or even could have received, actual notice through the fax or mailing.

Plaintiff submitted her fax and mailing as exhibits.[10] Pl.'s Mem. Law Opp'n Exs. C, D, ECF No. 22-2. The fax has no apparent cover letter and she does not identify who the sole recipient fax number belonged to; there is no way to know who, if anyone, actually received the Writ that she faxed. The mailing is no more effective. It begins with a brief letter addressed to "Wexford Health Sources, Inc.," c/o SCI-Muncy, and apparently was mailed to the SCI-Muncy Medical Staff Office. The let-

ter states, in full: "Dear Defendant: You and your employees have been sued. Enclosed is a copy of the Writ of Summons in the above-referenced matter. We have included a waiver of service of process. Please sign and return this waiver. Thank you for your prompt reply to this request. Sincerely, Geoffrey V. Seay, Esquire." Id. Again, there is no way to know who received and/or saw this letter. Indeed, it is fairly likely that Wexford and Famiglio, at least, did not receive notice through either the fax or the letter, as Famiglio stopped working at SCI-Muncy in 2013, and Wexford's contract with the Commonwealth ended in 2014.[11] Wexford & Famiglio Br. 7, ECF No. 19-1; Wexford & Famiglio Reply Br. 3, ECF No. 31-3. There is also no reason to believe that either Fisher or the Commonwealth were aware of this fax or letter.

Second, Plaintiff apparently assumed that one defendant would receive the fax and mailing and then somehow inform the other defendants that they were all being sued. She directed no documents individually to Famiglio, Fisher, or a representative of the Commonwealth.[12] Plaintiff's reliance on that assumption falls short of a good faith effort at providing notice to

10. Ordinarily, when deciding a motion to dismiss, a district court considers "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp., 998 F.2d at 1196. However, an exception is made for extrinsic documents upon which the plaintiff's claims are based, because the plaintiff then "has actual notice . . . and has relied upon these documents in framing the complaint." Schmidt, 770 F.3d at 249 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997)).

Here, the fax and mailing are extrinsic documents, without which Plaintiff's claims cannot survive. As explained above, Plaintiff's Complaint is untimely on its face and becomes timely only with evidence that Plaintiff made good faith efforts to serve her original

writ on Defendants. Plaintiff presents the fax and mailing as evidence of good faith, so her claims are thus based on those documents and the Court will consider them at this stage.

11. Plaintiff does not dispute these facts—but even if she did, Wexford and Famiglio's mere presence at SCI-Muncy would still not be evidence that they actually received the fax or mailing.

12. Indeed, the mailing, on its face, purports to provide notice only to Wexford and its employees. While Plaintiff does allege that Famiglio is a Wexford employee, she alleges that Fisher is a Commonwealth employee, not a Wexford employee. Corrected First Am. Compl. ¶¶ 5, 7, 38. And the Commonwealth is quite obviously not a Wexford employee.

each defendant, much less a good faith effort at effecting service.

Finally, it appears that Plaintiff never followed up to ensure that Defendants received notice through the fax and/or mailing, much less that they were actually served—even though roughly seven months passed before Plaintiff filed the Complaint, and at no time during that period did Plaintiff receive any indication that Defendants had been served or had received notice. Cf., e.g., Voicheck v. Ford Motor Co., No. 12–6534, 2013 WL 1844273, at *3 (E.D.Pa. May 2, 2013) (applying Pennsylvania law and finding no good faith where the plaintiff was informed by the sheriff that the defendant's address was incorrect, then made no further attempts at service over a period of nine months); Witherspoon, 768 A.2d at 1080–84 (finding no good faith where the plaintiff made only one attempt to serve the defendant in a period of nine months).

For these reasons, the Court finds that Plaintiff did not make a good faith effort to serve Defendants before the statute of limitations ran out. Accordingly, Plaintiff's claims, when properly filed and served months later, were time-barred. The Court will thus grant the motions to dismiss and dismiss Plaintiff's claims in full.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant all three motions to dismiss and dismiss all of Plaintiff's claims. An appropriate order follows.

## ORDER

**AND NOW,** this **9th** day of **August, 2016,** for the reasons set forth in the accompanying memorandum, the following is hereby **ORDERED:**

(1) Defendants' Motions to Dismiss (ECF Nos. 19, 20, 29) are **GRANTED.** The case is **DISMISSED,** and the clerk shall mark the case **CLOSED.**

(2) Defendant Fisher's first Motion to Dismiss (ECF No. 14) is **DENIED** as moot.

(2) Defendants' Motions for Leave to File Reply (ECF Nos. 27, 31) are **GRANTED.**

**AND IT IS SO ORDERED.**